No. 40,483

LOUIS WILLIAMS, et al., *Appellants*, v. H. C. HOLT, et al., *Appellees.*

(303 P. 2d 208)

Opinion filed November 3, 1956.

*Douglas Hudson*, of Fort Scott, argued the cause, and *Howard Hudson*, and *Douglas G. Hudson*, also of Fort Scott, were with him on the brief for the appellants.

*Payne H. Ratner*, of Wichita, argued the cause, and *Louise Mattox, Payne H. Ratner, Jr., Russell Cranmer, Dale B. Stinson, Jr., Cliff W. Ratner, William L. Fry, A. Wayne Murphy, Bernard V. Borst*, and *D. Clifford Allison*, all of Wichita, were with him on the brief for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to enjoin the issuance of bonds of

a rural high school district. The plaintiffs were denied relief and have appealed.

The cause was submitted to the trial court principally upon stipulated facts and a review of the pleadings is not necessary. Generally speaking, the plaintiffs sought to enjoin the issuance of the bonds because certain territory, a part of the district when the bond issue was authorized, had been detached prior to registration of the bonds.

There is no dispute of facts and the following is gleaned from the stipulated facts, some evidence which was introduced and shown in the counter-abstract and the statement of facts contained in appellants' brief as being included in the trial court's memorandum, which is not reproduced or otherwise abstracted.

On November 30, 1954, the electors of Rural High School District No. 4 of Bourbon county, hereafter referred to as RHS 4, voted to issue bonds in the sum of $300,000. On that date the gross 1954 valuation of the district was $4,362,319, and excluding intangible personal property, the valuation of all taxable tangible property was $4,013,472.

On April 22, 1955, the electors of Common School District No. 1 voted to disorganize and annex its territory to another common school district and under proceedings had, the State Department of Education on February 13, 1956, detached certain land from RHS 4 and attached it to another district. After the detachment the 1955 valuation for RHS 4, excluding intangible personal property, was $4,124,924. At some time after the election on November 30, 1954, the board of RHS 4 caused a series of bonds to be printed and on March 21, 1956, bonds 16 to 300 inclusive, in the amount of $285,000 were tendered to and registered by the Auditor of the state of Kansas. There is no contention the amount exceeds the statutory limitation. It is stipulated that none of the bonds so registered has been delivered to any purchaser.

A copy of the journal entry of judgment is not included in the abstract. A copy attached to the notice of appeal states the parties introduced their stipulation as to the facts; that the defendants introduced additional evidence; that the court took the matter under advisement and later adjudged that the plaintiffs take nothing and defendants recover their costs. Plaintiffs filed their motion for a new trial, which was denied, and they perfected their appeal to this court.

We first notice the motion of the appellees that the appeal be dismissed for the reason appellants did not include, in their brief, a statement of the question involved as required by Rule 6 (3) (b) of this court. The abstract and brief are printed under one cover, the portion devoted to the brief immediately following the specifications of error making it clear that the question is whether detachment of territory from the original boundaries of RHS 4 made such a change that the bonds should not be issued. We do not approve the practice but, in this case, will not dismiss on account of the omission to comply fully with the rule.

Appellants' argument is short. They first make the statement that the submission to the electors of the question of issuing $300,000 of bonds implied that amount would be essential, and that this court will take judicial notice it costs more now to build than it did in November, 1954. The inferred argument is that because the board registered and intends to issue only $285,000 leaves something amiss. Neither the trial court nor this court is authorized to determine how much the school board may spend, so long as the amount is within statutory limitations, and the mere fact the amount of bonds registered and which are to be sold is less than the amount authorized does not warrant judicial interference. (*Gray v. Joint Rural High School District No. 9,* 178 Kan. 387, 286 P. 2d 147.)

Appellants next argue that they and others in like situation who may have voted for the bonds did so in reliance that taxpayers residing in the detached territory which had a valuation of $237,395 remained liable as joint obligors and that it is fundamental law that if one joint obligor is released, the others are released. The statement as to liability of joint obligors is supported by quotation from 53 C. J. 1249. It will not be quoted but it is there stated that at common law and in the absence of statute and subject to certain limitations, release of one joint obligor releases the others. If it be assumed that individual taxpayers within a municipality are obligors on its bonds, the rule contended for has been abrogated by our statutes. See G. S. 1949, 16-101 and 105.

In general support of the matter just discussed and an inferred rather than direct argument that the bonds may not be issued because of changed conditions, appellants direct attention to and quote from a concurring opinion in *Peery v. City of Los Angeles,* 187 Cal. 753, 203 Pac. 992, 19 A. L. R. 1044, and from the court's opinion in *City of Ft. Myers v. State,* 129 Fla. 166, 176 So. 483, and

*Bremerton Municipal League v. Bremerton*, 13 Wash. 2d 238, 124 P. 2d 798. We have examined the cited cases but by reason of greatly differing states of fact and statutory provisions, we do not find them persuasive here and shall not review them.

Appellants and appellees direct our attention to the rule stated in *State, ex rel., v. City of Topeka*, 141 Kan. 309, 41 P. 2d 260, and followed in *Lewis v. City of South Hutchinson*, 162 Kan. 104, 114, 174 P. 2d 51, that:

"The exercise of the discretion in the issuance of bonds by the governing body should not be interfered with by the court unless it clearly appears that the purposes for which the bonds were originally voted have ceased to be necessary, or have been abandoned, or the conditions have so changed it would be inequitable to allow the bonds to be issued."

In our opinion it may not be said that conditions have so changed that it would be inequitable to allow the bonds to be issued. It is not at all clear that the territory detached from RHS 4 had a valuation of $237,395, but if it did, that amount was less than six per cent of the valuation of the entire district before the detachment took place. Although bonds in the amount of $300,000 were authorized, only $285,000 thereof were registered and are to be sold, or five per cent less than the authorization. Under such circumstances it is difficult to see where appellants were prejudiced. We also take note of the fact that appellants knew when the bonds were authorized that statutory provision was made for detachment of territory (G. S. 1955 Supp., 72-3549), and if that were accomplished prior to issuance of the bonds, in the absence of some statute to the contrary, and our attention is not directed to any, the detached territory would not be subject to liability (G. S. 1949, 10-119). Of course if the change effected by detachment of territory, prior to issuance of the bonds, was so great that it would be inequitable to permit them to be issued, a court should interfere, but in this case that is not the situation, and we are of the opinion the trial court did not err in its judgment.

We have not overlooked appellants' argument with respect to what constitutes issuance of bonds, nor appellees' statement of the history of lawsuits concerning the defendant district but shall not comment thereon as the matters mentioned are not decisive of the appeal.

The judgment of the trial court is affirmed.

FATZER, J., not participating.