STATE v. CITY OF ST. PETERSBURG.

173 So. 434.
Opinion Filed March 23, 1937.

510

*Chester B. McMullen,* for Appellant;

*Carroll R. Runyon, Raney H. Martin* and *W. B. Dickenson,* for Appellee.

BUFORD, J.—The appeal brings for review decree validating a refund bond issue in the sum of $19,826,000 of the City of St. Petersburg, Florida.

The first question presented is:

"Are Sections 1 and 5 of Article IX of the Constitution of the State of Florida violated by the issuance of refunding bonds classified according to series, the bonds of each series to be payable from taxes levied upon property located within the different parts of the territorial limits of the Municipality, where such classification is made for the purpose of continuing without change the tax liability of the different parts of the Municipality as such tax liability exists with respect to the outstanding indebtedness to be refunded by virtue of statutory provisions incident to the annexation of additional territory to such Municipality?"

Appellant contends that the constitutional provisions are violated. The contention was determined adversely by us on like contention being presented in the case of State, *ex rel.* Keefe, v. City of St. Petersburg, 106 Fla. 742, 144 Sou. 313, and it is so determined here on authority of what was said by us in that case.

The second question presented is:

"Are the refunding bonds proposed to be issued ·by the City invalid because Sections 5, 6, 7 and 8 of the Resolu-

tion authorizing the issuance of said refunding bonds and the terms and provisions of said bonds obligate the City to levy taxes for the payment thereof upon all homesteads located within the territorial limits of the City, in violation of the provisions of Section 7, Article X of the Constitution of the State of Florida and Chapter 17,060 of the Laws of Florida, 1935, specifically exempting from taxation homesteads up to a valuation of $5,000.00?"

The contention presented by this question was determined adversely to appellant in State v. City of Clearwater, 125 Fla. 73, 169 Sou. 602, and cases there cited, and on that authority is so determined here.

The third and fourth questions present the same contention and may be stated and considered together. The questions are:

"Are the refunding bonds proposed to be issued by the City invalid in that Section 17 of the Resolution authorizing their issuance prohibits the appellee City from, except as provided in Section 14 of said Resolution, accepting anything but lawful money of the United States of America in payment or satisfaction of taxes and special assessment liens levied or pledged for such refunding obligations in violation of the provisions of Chapter 17,401, Laws of Florida, 1935?"

"Has the City of St. Petersburg the legal power to issue refunding bonds wherein by the terms and provisions of the resolution and the terms and provisions of the refunding bonds the municipality covenants that the rights and remedies for the enforcement of the indebtedness refunded by said refunding bonds will appertain to said refunding obligations and the taxes securing the same, independently of any restriction or limitation thereon enacted by the Legislature of the State of Florida since January 1st, 1931, and

containing a special covenant to the effect that said Municipality will not avail itself of the provisions of Chapter 16, 965, of the Laws of Florida, 1935?"

Stated another way, the question is: "Are Chapters 17401 and 16965, Laws of Florida, Acts of 1935, violated by the provisions of the refunding resolution and the terms of the refunding bonds and, if so, does such violation affect the validity of the refunding bonds?"

The provisions in the resolution and the bonds here referred to are contrary to the terms of the statutes cited, but those statutes must be held not to apply to these refunding bonds because these bonds must constitute an extension of the original obligations which they refund. This question was squarely presented in the case of State v. City of Pensacola, 123 Fla. 331, 166 Sou. 851. The point was discussed fully in that case and determined adversely to the contention of the appellant.

The fifth question is:

"Is the City authorized and empowered to issue bonds in negotiable form as provided in Sections 6, 7, and 8 of the resolution authorizing the issuance of said bonds in that said bonds will be payable out of special funds and the laws of Florida do not authorize the issuance of negotiable bonds payable from special funds?"

The question, as stated, does not find basis in the record. The contention is that because it was shown by the resolution and in the face of the respective series of bonds that they are to be paid by taxes levied and assessed upon certain several territories within the municipality as now existing and that each of such series of bonds are a charge only against particular territory of the City that the bonds are payable out of special funds. That the bonds may be so issued was definitely determined by this Court in the

case of State, *ex rel.* Keefe, v. City of St. Petersburg, *supra.* It is too well settled in this jurisdiction to now be seriously questioned that refunding bonds to be valid must not create any new debt or impose any new liability against the taxpayers or their property within the meaning of the constitutional provisions governing the isusance of bonds, but they must merely renew and continue in a changed form the original existing indebtedness which they originally created in conformity with the Constitution as it existed at the time of the creation of such obligation. Boatright v. City of Jacksonville, 117 Fla. 477, 158 Sou. 42; Folks v. Marion County, 121 Fla. 17, 163 Sou. 298; Davis v. Dixon, 298 Fla. 87, 123 Sou. 536; State v. City of Pensacola, *supra.*

The bonds described in Section 1 of the refunding resolution were issued when the entire city of St. Petersburg was in zone 1 and as the territory of St. Petersburg was enlarged it was provided that those bonds continued as an obligation to be discharged by terms levied on the territory embraced in the City at the time of the issuance of such bonds but not upon the added territory.

The bonds described in Section 2 of the resolution were issued and became the obligation of the City to be paid by taxes levied on original zone 1 and added territory comprising zone 2.

The bonds described in Section 3 of the resolution were issued by the City of St. Petersburg and were a charge against zones 1, 2 and the then added territory designated as zone 3.

The bonds described in Section 4 of the resolution were issued and became a charge on zones 1, 2, 3 and a newly added territory of the City known as zone 4.

So the resolution and the bonds show that the refund-

ing bonds of each series respectively is to be paid by taxes levied on the territory tax levy upon which was pledged in the original bonds issued.

The obligation of the original bonds has not been changed. As new territory was added to the City of St. Petersburg statutes provided that the newly added territory should not be liable to taxation to produce money with which to pay the outstanding bonded obligation of the City. Such provisions were held valid in the case of State, *ex rel*. Keefe, v. City of St. Petersburg, *supra*.

All the resolution or the provisions in the bonds purport to do in this regard is to limit the exercise of the taxing power to the territory to which it was limited in the original bonds and by the Acts of the Legislature adding new territory to the City. Each of the bonds sought to be issued are payable from unlimited taxes upon the taxable property not exempt as a matter of law from taxation for such payment. The limitation placed by the Legislature as above outlined does not affect the negotiability of the refunding bonds as it did affect the negotiability of the original bonds.

For the reasons stated, the decree should be affirmed and it is so ordered.

Affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN and DAVIS, J. J., concur.