374 So.2d 461 (1979)
NORTH RIDGE GENERAL HOSPITAL, INC., Etc., et al., Appellants,
v.
CITY OF OAKLAND PARK, etc., et al., Appellees.
No. 54012.
Supreme Court of Florida.
June 7, 1979.
Rehearing Denied September 21, 1979.
*463 Earl Faircloth, of Houston, Faircloth, Cooper & Easthope, Fort Lauderdale, for appellants.
Lewis D. Haines, II, City Atty., and Edward J. Williams, Asst. City Atty., Fort Lauderdale, for appellees.
SUNDBERG, Justice.
This cause is before us on direct appeal from an order of the Circuit Court for Broward County upholding the constitutionality of chapter 75-452, Laws of Florida, a special law annexing appellants' property to the City of Oakland Park, Florida. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution. On June 3, 1975, appellant North Ridge General Hospital, Inc. was notified by a city official that its property had been annexed to appellee City of Oakland Park by act of the legislature, chapter 75-452, Laws of Florida. Appellants immediately filed a declaratory judgment action in circuit court, seeking an injunction to prevent appellees from enforcing this law. Appellants asserted that chapter 75-452 is unconstitutional in that it denied them equal protection of the law and because the notice of intent to seek enactment[1] and the title[2] of the act were insufficient to inform appellants of the annexation. On appellants' motion for summary judgment the circuit court rejected the constitutional challenges and dismissed the action.
We disagree with appellants' contention that the title of chapter 75-452 and the notice of intention to seek its enactment are insufficient to give adequate notice as required by article III, sections 6 and 10, Florida Constitution.[3] The rule with respect to the notice required by each of these constitutional provisions was set forth by this Court in Coldewey v. Board of Public Instruction, 189 So.2d 878, 880 (Fla. 1966):
[T]he purpose of both of these constitutional requirements is to assure that proper notice will be given of the subject matter of proposed legislation. King Kole, Inc. v. Bryant, Fla. 1965, 178 So.2d 2; State ex rel. Watson v. City of Miami, 1943, 153 Fla. 653, 15 So.2d 481. Therefore, the measure of the violation of these constitutional requirements must be whether such published notice or title, as the case may be, confuses as to the subject matter of the proposed legislation.
Thus, the constitution requires only that notice be given of the subject of proposed legislation, not that the object of such legislation be defined in the notice. "The subject is the matter to which an act relates; the object, the purpose to be accomplished." Wright v. Board of Public Instruction, 48 So.2d 912, 915 (Fla. 1950). The term "subject" is broader than the word "object," as *464 one subject may contain many objects. Spencer v. Hunt, 109 Fla. 248, 147 So. 282 (1933). Therefore, the terms of both the notice of intention to seek enactment and the title of an act must be broad enough to include all matters contained in the body of the proposed legislation, but the specific contents of the act need not be listed in detail in either form of notice. City of Naples v. Moon, 269 So.2d 355 (Fla. 1972); King Kole v. Bryant, 178 So.2d 2 (Fla. 1965). The function of both the notice of intention to seek enactment and the title of a special legislative act is to provide reasonable notice to a person whose interests may be directly affected by the proposed legislation, so that he may inquire further into the details thereof and, if he so desires, seek to prevent its enactment or to persuade the legislature to change its substance. City of Naples v. Moon; State ex rel. Watson v. City of Miami, 153 Fla. 653, 15 So.2d 481 (1943). If the terms of the notice are broad enough so that an average person can reasonably foresee that his interests might be affected by the proposed legislation, the notice given is constitutionally sufficient.
In the instant case, we find that the terms of the notice of intention to seek enactment and the title of chapter 75-452, Laws of Florida, meet constitutional requirements. Both clearly state that the subject of the act is the annexation of property to the City of Oakland Park. Appellants' property is contiguous to the municipal boundaries and is situated in such a manner that its inclusion within the city is a logical extension of such boundaries. Therefore, it is clear that the notice given was reasonably sufficient to notify appellants that their property might be included in the proposed annexation.
Appellants' contention that chapter 75-452 denies them equal protection of the law is equally without merit. The power to annex an unincorporated area to a municipality reposes in the legislature.[4] The legislature has chosen to share this power with municipal corporations[5] and chapter 171, Florida Statutes (1975), delineates the procedures to be followed when annexation is effected at the municipal level rather than in the legislative forum. When a municipality initiates annexation, subsections (1) and (2) of section 171.0413 provide for a referendum to enable the electors of the annexing municipality and of the area proposed to be annexed to vote on the annexation issue. Further, section 171.081 provides for limited judicial review of the annexation process. In contrast, chapter 75-452, the vehicle employed by the legislature to annex appellants' property, fails to provide either of these procedures. Thus, the right to a referendum and judicial review is predicated upon whether the municipality initiates annexation pursuant to the statutory authority of chapter 171 or whether the legislature chooses to effect the annexation by special act. Although appellants concede that the legislature possesses the power to enact both general and special laws concerning municipal annexation, they posit that this latter power has been exercised so as to deny equal protection to those whose property is annexed by special act. For the following reason we find that chapter 75-452, Laws of Florida, withstands constitutional scrutiny.
The legislature has wide discretion in creating statutory classifications. There is a presumption in favor of the validity of a statute which treats some persons or things differently from others.
[I]f any state of facts can reasonably be conceived that will sustain the classification attempted by the Legislature, the existence of that state of facts at the time the law was enacted will be presumed by the courts. The deference due to the legislative judgment in the matter will be observed in all cases where the *465 court cannot say on its judicial knowledge that the Legislature could not have had any reasonable ground for believing that there were public considerations justifying the particular classification and distinction made.
Lewis v. Mathis, 345 So.2d 1066, 1068 (Fla. 1977); accord, Yoo Kun Wha v. Kelly, 154 So.2d 161 (Fla. 1963); Anderson v. Board of Public Instruction for Hillsborough County, 102 Fla. 695, 136 So. 334 (1931). Further, one who assails the classification has the burden of showing that it is arbitrary and unreasonable. State v. City of Miami Beach, 234 So.2d 103 (Fla. 1970); Shelton v. Reeder, 121 So.2d 145 (Fla. 1960); State ex rel. Bennett v. Lee, 123 Fla. 252, 166 So. 565 (1936).
It is well-settled that the legislature is entitled to annex an area with or without an affirmative vote of the affected property owners.[6] As noted by appellants, however, subsections (1) and (2) of section 171.0413 require a referendum when annexation is initiated by the municipality. The reasoning behind this distinction is readily apparent. The legislators are the elected representatives of those residing within the annexing municipality as well as of the residents of the area proposed to be annexed. Consequently, these officials are obliged to consider the interests of both sets of constituents in debating the annexation issue. When a municipality seeks to annex a neighboring area, however, there is a danger that the interests of those persons in the area proposed to be annexed will not be fully aired, because the elected officials of the municipality are not also the elected representatives of the neighboring area. In order to ensure proper representation of the interests of all persons to be affected by the municipally-initiated annexation, chapter 171 provides for a referendum on the annexation question and other procedural safeguards.
An examination of section 171.044, Florida Statutes (1975), demonstrates the legislative intent underlying the method of annexation employed in the case before us. Under section 171.044, property owners may voluntarily petition a municipality for annexation. A referendum is not required in order to complete annexation pursuant to this provision. The legislature apparently concluded that when the property owners themselves seek annexation, a referendum is unnecessary to protect their interests; these persons would not voluntarily petition for annexation had they not concluded that it would be to their benefit. It is evident that similar reasoning underlies the absence of a referendum when members of the legislature effect annexation by special act. Hence, we conclude that this is a reasonable basis for the differing procedural requirements governing municipally-initiated annexation and annexation by the legislature pursuant to special act. Accordingly, the order of the Circuit Court for Broward County upholding chapter 75-452, Laws of Florida, is affirmed.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, HATCHETT and ALDERMAN, JJ., concur.
NOTES
[1] OF PROPOSED LEGISLATION
TO WHOM IT MAY CONCERN:
Notice is hereby given of intention to apply to the 1975 session of the Legislature of the State of Florida for the passage of an act relating to the enlarging and extending of the corporate limits of the city of Oakland Park by including previously unincorporated land into said corporate limits; providing an effective date.
 BROWARD COUNTY
 LEGISLATIVE DELEGATION
 By: (s) PETER B. TIERNAN
 Attorney for the Delegation.
 April 14, 1975"

[2] bill to be entitled An act relating to the City of Oakland Park, Broward County; extending and enlarging the corporate limits of the City of Oakland Park by including previously unincorporated land into said corporate limits; providing an effective date."
[3] These sections, in pertinent part, provide:

SECTION 6.  Laws. Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title.
SECTION 10.  Special laws. No special law shall be passed unless notice of intention to seek enactment thereof has been published in the manner provided by general law.
[4] Art. VIII, § 2(c), Fla. Const.; City of Long Beach Resort v. Collins, 261 So.2d 498 (Fla. 1972); City of Auburndale v. Adams Packing Ass'n, 171 So.2d 161 (Fla. 1965); MacGuyer v. City of Tampa, 89 Fla. 138, 103 So. 418 (1925).
[5] Smith v. Ayres, 174 So.2d 727 (Fla. 1965); City of Sebring v. Harder Hall, Inc., 150 Fla. 824, 9 So.2d 350 (1942); Klich v. Miami Land & Dev. Co., 139 Fla. 794, 191 So. 41 (1939).
[6] State ex rel. Davis v. City of Clearwater, 106 Fla. 761, 139 So. 377 (1932); State v. City of Miami, 103 Fla. 54, 137 So. 261 (1930); Nabb v. Andreu, 89 Fla. 414, 104 So. 591 (1925).