Mr. Thomas V. Infantino City Attorney City of Inverness
QUESTION:
May the City of Inverness annex unincorporated property pursuant to the provisions of s. 171.044, F.S., without holding an approving referendum despite the fact that the city charter requires a referendum to be held whenever the city seeks to annex property?
SUMMARY:
The City of Inverness may annex unincorporated property only in accordance with the procedures provided in ch. 171, F.S., and may not require an ordinance annexing property and redefining the boundary lines of the city pursuant to the provisions of s.171.044, F.S., relating to voluntary annexations, to be submitted to a referendum on such annexation.
As you pointed out in your letter, s. 171.044, F.S., provides that private property owners in the unincorporated areas of a county may petition the governing body of the municipality to which their property is contiguous to annex their property. If the petition is signed by each owner of property in the area proposed to be annexed, the governing body of the municipality may adopt an ordinance to annex that property. The ordinance becomes effective after publication for 4 consecutive weeks as described in s.171.044(2). Unlike the alternative annexation procedures described in s. 171.0413, voluntary annexation pursuant to s. 171.044 does not require the annexation ordinance to be approved by referendum.See North Ridge General Hospital, Inc. v. City of Oakland Park,374 So.2d 461, 465 (Fla. 1979).
According to your letter and the accompanying documents, the City of Inverness was created by special act of the Legislature, ch. 63-1442, Laws of Florida, which special law also constitutes the city charter. Section 5 of the charter, entitled `Annexation,' purports to allow the city to annex unincorporated property in accordance with any of the 4 methods outlined therein, including `upon petition signed by a majority of all of the landowners of the area sought to be annexed consenting to and requesting the annexation of said area to the City . . . .' (Emphasis supplied.) Section 5 of the city charter also contains the statement that `[a]ny annexation of territory to the City of Inverness shall be submitted to a vote of the freeholders residing inside said city and said annexation shall not be had unless a majority of the votes cast is in favor of said annexation'; and further provides that as to the 4 methods of annexation set forth in that section of the charter, the annexation must be submitted to a vote of the freeholders residing within the corporate limits of the city at which election the annexation must be approved by a majority of the votes cast in such election, absent which majority vote the annexation shall be null and void. Since the city charter expressly requires every annexation to be accompanied by a referendum, you wish to know whether the city may validly annex unincorporated property pursuant to s. 171.044, F.S., without submitting the issue to the city's electors.
The genesis of all municipal power is the State Constitution. See
s. 2, Art. VIII, State Const. In this regard, municipalities have been granted broad powers to enable them to conduct municipal government. See s. 2(b), Art. VIII, State Const., and part I of ch. 166, F.S. With respect to annexation of unincorporated property, however, the Constitution itself provides that such annexation `shall be as provided by general or special law.' See
s. 2(c), Art. VIII, State Const. Thus, it is the state Legislature which is vested with the power to authorize and regulate municipal annexation. See North Ridge General Hospital, Inc. v. City of Oakland Park, supra; cf. Smith v. Ayres, 174 So.2d 727, 729 (Fla. 1965); Klich v. Miami Land Development Co., 191 So. 41 (Fla. 1939). Pursuant to this grant of power, the Legislature created the Municipal Annexation and Contraction Act by enacting ch. 74-190, Laws of Florida (codified as ch. 171, F.S. (1974 Supp.)). One of the stated purposes of that act is `. . . to provide viable and usable general law standards and procedures for adjusting the boundaries of municipalities in this state.' See s. 171.022(1), F.S. (1974 Supp.); see also s. 171.021(2), F.S. (1974 Supp.). Subsection (2) of s. 171.022 goes on to provide that `[t]he provisions of any special act or municipal charter relating to the adjusting of municipal boundaries in effect on October 1, 1974, are repealed except as otherwise provided herein.' Whether this provision had the effect of repealing s. 5 of the city charter of the City of Inverness was unclear in light of the last sentence of s. 171.04(1), F.S. (1974 Supp.), which reads: `The method of annexation provided by this section is in addition to any other procedure provided by any special or local law, and no suchspecial or local law is repealed or modified by this act.' (Emphasis supplied.) It is not necessary to attempt to reconcile this apparently contradictory language, however, since s. 171.04, F.S. (1974 Supp.), was repealed in 1975. See s. 2, ch. 75-297, Laws of Florida. A new section, s. 171.0413, F.S. 1975, was created in its place. That section provides in pertinent part that `[e]xcept as otherwise provided in this law, the annexation procedure as set forth in this section shall constitute a uniform method for the adoption of an ordinance of annexation . . . andall existing provisions of special laws which establish municipalannexation procedures are repealed hereby . . . .' (Emphasis supplied.) See s. 171.0413(4), F.S. This office has consistently construed the proviso language `except as otherwise provided in this law' as referring to s. 171.044, F.S., which provides for an alternative procedure for voluntary annexation without a referendum. See AGO 077-133. See also s. 171.071, F.S. I am not aware of any other statutory provision which would operate to spare the annexation procedures in your city charter from this repealer. Consequently, as it appears that s. 5 of the charter of the City of Inverness was repealed in 1975 by the above-quoted provision of ch. 75-297, I must conclude that, unless a valid special law or general law of local application has been subsequently enacted affecting the exercise of the extra-territorial powers of the city, it may annex unincorporated property only in the manner and according to the procedures contained in ch. 171, F.S. Even were such a special law or general law of local application to exist, the supplemental method of annexation provided by s. 171.044, F.S., may be utilized by municipalities for voluntary annexations upon compliance with its terms and conditions. See Armstrong v. City of Edgewater,157 So.2d 422 (Fla. 1963).
Prepared by: Percy W. Mallison, Jr., Assistant Attorney General